UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| YOLANDA MCGINNIS, | : | Case No.  1:13-cv-423 |
| c/o Gerhardstein & Branch, Co LPA | : | |
| 432 Walnut Street Suite 400 | : | Judge |
| Cincinnati, OH  45202 | : | |
| *as administratrix of the estate of Corey* | : | |
| *L. McGinnis Sr.*, | : | |
| | : | |
| Plaintiff, | : | **CIVIL COMPLAINT AND JURY** |
| v. | : | **DEMAND** |
| | : | |
| CITY OF NORTH COLLEGE HILL, | : | |
| OHIO | : | |
| 1500 W Galbraith Rd | : | |
| North College Hill, OH 45231, | : | |
| | : | |
| and | : | |
| | : | |
| RYAN SCHRAND, | : | |
| North College Hill Police Department | : | |
| 1500 W Galbraith Rd | : | |
| North College Hill, OH 45231, | : | |
| *Individually and in his Official Capacity* | : | |
| *as an employee of the City of North* | : | |
| *College Hill*, | : | |
| | : | |
| Defendants. | : | |

## I. PRELIMINARY STATEMENT

1.     This civil rights action challenges as excessive force the tasing and killing of Corey McGinnis by North College Hill police officer Ryan Schrand.  Mr. McGinnis was tased in the chest on June 26, 2012.  At the time of the tasing Mr. McGinnis was not armed, nor was he using force or threatening to use force against Officer Schrand or anyone else.  The taser unit had not been regularly spark tested and was emitting voltage and current higher than manufacturer specifications in violation of proper taser safety standards.  The taser shot to the upper chest near

1

Mr. McGinnis' heart was also a dramatic departure from proper safety standards and was consistent with the unconstitutional policy and practice of the North College Hill Police Department which permitted tasing suspects in the upper chest in situations calling only for non-deadly force. Plaintiff brings this action in order to secure fair compensation and to deter these Defendants from causing future taser deaths.

## II. JURISDICTION

2.     Jurisdiction over claims arising from Defendant's violation of the Civil Rights Act is conferred upon this Court by 28 U.S.C. §§ 1331, 1343 (3) and (4).

3.     Jurisdiction over the state law claims is conferred upon this Court by 28 U.S.C. §1367.

4.     Venue is proper in this Division.

## III. THE PARTIES

5.     Plaintiff Yolanda McGinnis is the sister of Corey Lamot McGinnis, Sr., who is deceased. She brings this suit as the Administratrix of the Estate of Corey Lamot McGinnis, Sr. for the benefit of his heirs.

6.     Defendant Ryan Schrand was at all times relevant to this action employed by the City of North College Hill as a police sergeant and acting under color of law. Defendant is a "person" under 42 U.S.C. § 1983 and at all times relevant to this case acted under color of law. He is sued in both his individual and official capacities.

7.     Defendant City of North College Hill ("City") is a unit of local government organized under the laws of the State of Ohio. Defendant City of North College Hill is a "person" under 42 U.S.C. § 1983 and at all times relevant to this case acted under color of law.

## **IV. FACTS**

8. Corey McGinnis was 35 years old in June, 2012. He had eight children. He cared for all of his children and was very involved in their lives. He led several of his children weekly in athletic workouts to help them with personal discipline and to achieve athletic proficiency and improve their physical fitness.

9. On the afternoon of June 26, 2012, Corey McGinnis was playing a "four-on-four" basketball game at 6300 Simpson Ave (Crutchfield Park), Springfield Township, Cincinnati, OH 45224. Two of his children and one of his nephews were also playing on his team in the game.

10. At some point in the game, an argument broke out among the players. During the argument someone who was not part of the McGinnis family fired multiple shots from a handgun.

11. After the shots were fired, a physical altercation began on the basketball court during which Mr. McGinnis was attacked by several persons.

12. Following the attack, Mr. McGinnis sat on the playground bleachers to recover. He was bleeding from the nose and breathing heavily. He had a history of asthma.

13. As he attempted to leave the area Mr. McGinnis was again confronted by the same group. Another altercation began and more shots were fired.

14. North College Hill officers Defendant Schrand and Aaron Kodish responded to the scene.

15. As the police arrived and their sirens became audible, the crowd began to flee the area.

16. At this time, Mr. McGinnis and his nephew, Rayshawn Whitehead, were engaged in a physical altercation with one of McGinnis's attackers, Charles Rodney.

17. When Defendant Schrand arrived on the scene, he separated Mr. Rodney from Mr. Whitehead and Mr. McGinnis.

18. Defendant Schrand then ordered Mr. Whitehead to get on the ground.

19. Within a few seconds of his order Defendant Schrand deployed his X-26 taser unit in "probe mode" and tased Mr. Whitehead in the upper chest and Mr. Whitehead fell to the ground.

20. "Probe mode" is a function of the taser device whereby two barbs are deployed from a single unit and a continuous electric shock is administered to the suspect through the barbs.

21. At this point there were at least two cruisers from two departments and multiple officers close to Defendant Schrand.

22. Defendant Schrand then directed his attention to Mr. McGinnis, who was standing nearby.

23. Mr. McGinnis was bleeding from the previous altercations and breathing heavily.

24. Mr. McGinnis was unarmed.

25. Mr. McGinnis was not wearing a shirt and was wearing only shorts and tennis shoes.

26. Defendant Schrand unholstered his handgun and ordered Mr. McGinnis to lie down on the ground.

27. Mr. McGinnis continued to stand still and take deep breaths.

28. Defendant Schrand then holstered his gun, picked up his taser, turned it off, and changed the cartridge. He then turned the taser on and pointed it at Mr. McGinnis. He again ordered McGinnis to the ground.

29. During the entire time he stood facing Defendant Schrand, Mr. McGinnis did not advance on him, did not assume a fighting stance or otherwise use or threaten to use any force on him.

30. Defendant Schrand then deployed his taser in "probe mode" at McGinnis. One of the barbs struck McGinnis in the upper chest near his heart. The other probe struck Mr. McGinnis lower on his chest.

31. Mr. McGinnis fell to the ground.

32. Within a short period of time Mr. McGinnis stopped breathing. Defendant Schrand began chest compressions. An ambulance was called to the scene, which transported Mr. McGinnis to Mercy Franciscan Hospital in Mt. Airy.

33. Mr. McGinnis was soon transferred to University Hospital, where he lingered for several days and then died on July 1, 2012 at 4:10 p.m.

34. The cause of death was sudden cardiac arrest caused by the taser.

35. At all times relevant to this action Defendant Schrand utilized his X-26 taser unit without spark testing the unit on a regular basis as required by North College Hill Police Department policy.

36. At all times relevant to this action the City failed to supervise officers with respect to compliance with the duty to spark test the X-26 units.

37. At all times relevant to this action Defendant Schrand utilized his X-26 taser unit without measuring the voltage or the current output of his taser unit.

38. At all times relevant to this action the City failed to measure the voltage or current output of the taser units utilized in the field by North College Hill police officers, including the unit used by Defendant Schrand.

39. On June 26, 2012 the voltage and current output of the X-26 taser unit utilized by Defendant Schrand exceeded the voltage and current manufacturer specifications as set by Taser International.

40.     At the time of the use of force in this case Defendant Schrand was a certified taser instructor.

41.     On June 26, 2012, Defendant Schrand was aware that deploying the taser in probe mode to the upper chest can cause changes in a subject's heart rate and heart rhythm.

42.     On June 26, 2012, Defendant Schrand was aware that deploying the taser in probe mode to the upper chest can cause or contribute to a subject's cardiac arrest.

43.     Defendant Schrand had a practice or custom of deploying his taser in probe mode and striking suspects in the upper chest.  He tased one suspect in the upper chest in North College Hill in 2011 and he directed another officer to tase a suspect in 2012 and those probes also struck the suspect in the upper chest.  As stated above, Defendant Schrand also tased Mr. Whitehead in the upper chest shortly before tasing Mr. McGinnis in the upper chest.

44.     Defendant Schrand was never disciplined, counseled or retrained by the City based on of his practice of tasing suspects in the upper chest.

45.     By failing to spark test his taser unit, failing to measure output, failing to avoid the upper chest with the probes, and otherwise failing to use the taser properly, Defendant Schrand acted unreasonably, negligently, recklessly, wantonly, willfully, knowingly, intentionally, and with deliberate indifference to the safety and rights of Corey McGinnis.

46.     The use of force by Defendant Schrand on Corey McGinnis on June 26, 2012, was unreasonable and excessive and violated clearly established law.

47.     Defendant City of North College Hill's policies, practices, customs, and usages regarding the use of force was a moving force behind the excessive force used on Mr. McGinnis by Defendant Schrand in this case.  Specifically, City policy, training and supervision did not require output measurement for each unit and did not limit chest shots to situations where deadly

force was authorized. Moreover City supervision did not include monitoring officer compliance with the duty to spark test taser units or the duty to avoid shots to the upper chest. The City custom, policy, training, and supervision served as a moving force for the excessive force used on Mr. McGinnis.

48. The training and supervision provided by the City of North College Hill to Defendant Schrand was deliberately indifferent to the safety of citizens, including citizens such as Mr. McGinnis, at risk of arrest by officers using tasers.

49. The deployment of prongs to Mr. McGinnis' upper chest was consistent with the policy and practice followed by Defendant Schrand and other North College Hill officers of targeting the upper chest in non-deadly force situations and was a moving force behind the excessive force used on Mr. McGinnis.

50. The City of North College Hill has not disciplined Defendant Schrand for the conduct set out in this complaint.

51. The City of North College Hill has ratified the conduct of Defendant Schrand set out in this complaint. Specifically, the investigation of the use of force by Defendant Schrand was not intended to determine whether his taser use was consistent with City policy on spark testing or with accepted safety precautions including but not limited to determining whether the unit was spark tested and its output measured before its use on June 26, 2012, and determining whether the upper chest shot to Mr. McGinnis was reasonable under the circumstances.

52. As a direct and proximate result of the conduct of Defendant Schrand and the City of North College Hill, Corey McGinnis suffered injury, pain, emotional and psychological trauma, and eventually died as a result of such injury.

7

53. As a further direct and proximate result of Corey McGinnis's wrongful death, Mr. McGinnis's survivors, next of kin and/or heirs have suffered permanent damages including but not limited to grief and severe emotional distress. They have incurred funeral bills and other expenses and will incur additional expenses in the future.

## V. FIRST CAUSE OF ACTION- EXCESSIVE FORCE (42 U.S.C. § 1983)

54. Defendants Schrand and North College Hill have, under color of law, deprived Corey McGinnis of rights, privileges, and immunities secured to him by the United States Constitution, including the prohibition on unreasonable searches and seizures contained in the Fourth and Fourteenth Amendments to the United States Constitution.

## VI. SECOND CAUSE OF ACTION – WRONGFUL DEATH

55. Defendants' actions caused the wrongful death of Corey McGinnis resulting in damages recoverable under R.C. § 2125.02.

## VII. SECOND CAUSE OF ACTION – ASSAULT AND BATTERY

56. Defendant Schrand intentionally and maliciously applied and threatened to apply unlawful and unnecessary force against Corey McGinnis.

## VIII. JURY DEMAND

57. Plaintiff hereby demands a trial by jury of all issues triable by jury.

## IX. PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that this Court award them:

A. Compensatory damages in an amount to be shown at trial;

B. Punitive damages against Defendant Schrand only in an amount to be shown at trial (no punitive damages are sought against the City of North College Hill);

C. Costs incurred in this action and reasonable attorney's fees;

D. Prejudgment interest;

E. Such other and further relief as the Court deems just and proper.

Respectfully submitted,

| | |
|---|---|
| /s/ Alphonse A. Gerhardstein | /s/ Konrad Kircher |
| Alphonse A. Gerhardstein (0032053) | Konrad Kircher (0059249) |
| Trial Attorney for Plaintiffs | Trial Attorney for Plaintiffs |
| Jennifer L. Branch (0038893) | Michael Arnold (0076777) |
| Attorney for Plaintiffs | Attorney for Plaintiffs |
| Gerhardstein & Branch Co. LPA | Kircher, Arnold, & Dame |
| 432 Walnut Street, Suite 400 | 4824 Socialville-Foster Rd |
| Cincinnati, Ohio 45202 | Mason, Ohio 45040 |
| Tel (513) 621-9100 | Tel (513) 229-7996 |
| Fax (513) 345-5543 | Fax (513) 229-7995 |
| agerhardstein@gbfirm.com | kkircher@kircherlawoffice.com |
| jbranch@gbfirm.com | marnold@kircherlawoffice.com |

/s/ Clyde Bennett II
Clyde Bennett II (0059910)
Trial Attorney for Plaintiffs
119 E Court St.
Cincinnati, Ohio 45202-1203
Tel (513) 632-9503
Fax (513) 721-5824
clyde@clydebennettthelaw.com